# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

\*\*\*

ANTHONY OLIVER,

     Plaintiff,

vs.

HOUSTON ASTROS, LLC, *et al*.,

     Defendants.

Case No. 2:20-cv-00283-APG-VCF

**ORDER**

APPLICATION TO PROCEED IN FORMA PAUPERIS
(EFC NO. 1) AND COMPLAINT (ECF NO. 1-1)

Before the Court are pro se plaintiff Anthony Oliver's application to proceed in forma pauperis (ECF No. 1) and complaint (ECF No. 1-1). Oliver's in forma pauperis application is granted and his complaint is dismissed without prejudice.

## I. Background

Oliver alleges that in 2017 he lived in Las Vegas and he placed a losing $7,500 bet in a casino that the Los Angeles Dodgers baseball team would win the Major League Baseball World Series against the Houston Astros. (ECF No. 1-1 at 5). In 2018, plaintiff alleges that he placed a second losing $6,000 bet through a sports betting app on the Dodgers to win the World Series against the Boston Red Sox. (*Id*.). Plaintiff argues that he lost his bets both years because the Astros and Red Sox cheated, referring to the organizations' sign-stealing scandals. (*Id*.). Plaintiff argues that defendants, the Houston Astros and the Boston Red Sox, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") 18 U.S.C § 1964, conspiracy to violate 18 U.S.C § 1962(c) and (d) unjust enrichment.

## II. Discussion

Oliver's filings present two questions: (1) whether Oliver may proceed in forma pauperis under 28 U.S.C. § 1915(e) and (2) whether Oliver's complaint states a plausible claim for relief.

//

## I.  Whether Oliver May Proceed In Forma Pauperis

Under 28 U.S.C. § 1915(a)(1), a plaintiff may bring a civil action "without prepayment of fees or security thereof" if the plaintiff submits a financial affidavit that demonstrates the plaintiff "is unable to pay such fees or give security therefor." If the plaintiff is a "prisoner" as defined by 28 U.S.C. § 1915(h), as amended by the Prison Litigation Reform Act ("PLRA"), he remains obligated to pay the entire fee in installments, regardless of whether his action is ultimately dismissed. See 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Under the PLRA, a prisoner seeking leave to proceed IFP must submit a "certified copy of the trust fund account statement (or institutional equivalent) for the prisoner for the six-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court must assess an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. See 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner must collect subsequent payments, assessed at 20% of the preceding month's income, in any month in which the prisoner's account exceeds $10, and forward those payments to the Court until the entire filing fee is paid. See 28 U.S.C. § 1915(b)(2).

Plaintiff is currently incarcerated at Georgia Long County Prison. (ECF No. 1 at 1). Plaintiff's application to proceed in forma pauperis includes a declaration under penalty of perjury that plaintiff is unable to pay the costs of these proceedings. (ECF No. 1). Plaintiff's affidavit states that he has no wages. (*Id.*) Plaintiff also attached a notarized account statement from the Georgia Long County Prison. (*Id.* at 3-8). Plaintiff's application to proceed in forma pauperis is granted.

//

## II.    Whether Oliver's Complaint States a Plausible Claim

### a.    Legal Standard

Section 1915 also requires that if the Court grants an application to proceed in forma pauperis, the Court must review plaintiffs' complaint to determine whether the complaint is frivolous, malicious, fails to state a claim on which the Court may grant relief, or if the complaint seeks damages against a defendant who is immune from that relief. 28 U.S.C. § 1915(e)(2)(B). Federal Rule of Civil Procedure 8(a) provides that a complaint "that states a claim for relief" must contain "a short and plain statement of the claim showing that the [plaintiff] is entitled to relief." The Supreme Court's decision in *Ashcroft v. Iqbal* states that to satisfy Rule 8's requirements, a complaint's allegations must cross "the line from conceivable to plausible." 556 U.S. 662, 680 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547, (2007)).

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint for failure to state a claim upon which relief can be granted. A complaint should be dismissed under Rule 12(b)(6) "if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims that would entitle him to relief." *Buckey v. Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992). Though "[n]o technical form is required for complaints" (Fed. R. Civ. P. 8(a)), "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. …If doing so would promote clarity, each claim founded on a separate transaction or occurrence…must be stated in a separate count or defense" (Fed. R. Civ. P. 10(b)). The amended complaint must be "complete in itself, including exhibits, without reference to the superseded pleading." LR 15-1. "A document filed pro se is 'to be liberally construed'" and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). If the Court dismisses a

complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

### b. Cheating Scandals in Sports and the Rights of Sports Fans

Cheating scandals in sports are nothing new.[1] In the "Black Sox Scandal" of 1919, baseball fans learned that key players on the Chicago White Sox conspired with gamblers to throw the World Series to their opponents the Cincinnati Reds.[2] In more recent times, baseball player Jose Canseco admitted that he used performance enhancing drugs throughout his career spanning the 1980-1990s (he claims many of his fellow baseball players did the same[3]) and in 2003 umpires ejected player Sammy Sosa (no stranger to controversy himself[4]) for using a "corked bat" in a 2003 baseball game.[5] In the hyper-competitive world of professional sports, where hard-working athletes are heroes to children and adults alike, it is no secret that athletes will sometimes disappoint their fans by acting unethically to gain a perceived edge.

The Ninth Circuit recently held that viewers suffered no legal injury when boxer Manny Pacquiao failed to disclose his shoulder condition prior to his match with Floyd Mayweather, Jr., finding that plaintiffs, "got what they paid for — a full-length regulation fight between two boxing legends."

---

[1] A few months ago, few sportsbooks could have predicted that all sporting events would be canceled in 2020 due to the COVID-19 coronavirus, so cheating scandals in sports might seem like a glimmer of consistency over today's uncertainty. See Victor Mather, *All the Sports Canceled by the Coronavirus*, The New York Times (March 13, 2020).
[2] See Charles Fountain, *The Betrayal The 1919 World Series and the Birth of Modern Baseball*, Oxford University Press (2016).
[3] See Jose Canseco, *Juiced: Wild Times, Rampant 'Roids, Smash Hits & How Baseball Got Big*, Regan Books (2005).
[4] See Bob Greene, *Op-ed: Steroids and the Asterisk*, The New York Times (October 22, 2005).
[5] See Damon Hack, *BASEBALL; Sosa Ejected for Using Corked Bat In a Game*, The New York Times (June 4, 2003).

*Alessi v. Mayweather (In re Pacquiao-Mayweather Boxing Match Pay-Per-View Litig.)*, 942 F.3d 1160, 1164 (9th Cir. 2019). Sister circuit courts have found that sports fans generally have no "legally cognizable right, interest, or injury" to recover for violations of a professional sports league's "own rules." *Mayer v. Belichick*, 605 F.3d 223, 237 (3d Cir. 2010) (Affirming dismissal of football season ticket-holder's lawsuit arising out of the Boston Patriot's videotaping of its opponent's signals.); see also *Bowers v. Fed'n Internationale De L'Automobile*, 489 F.3d 316, 319 (7th Cir. 2007)(Affirming dismissal of fans' suit against car race organizers when competitors failed to appear on race day). The Courts have repeatedly refused to allow judges to become replay officials for disappointed fans. Oliver's claims here are even more remote because his bets directly benefitted the sportsbooks, not the Astros or Red Sox. While the Court believes that Oliver's claims would likely be dismissed under the principals set forth in *Alessi,* 942 F.3d 1160, the Court proceeds to analyze Oliver's causes of action pursuant to the liberal pleading standard for pro se litigants below.

### i.  Oliver's RICO Claims

To state a federal RICO claim under 18 U.S.C. §§ 1964(c) and 1962(c) the plaintiff must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Grimmett v. Brown*, 75 F.3d 506, 510 (9th Cir. 1996)  (citing 18 U.S.C. §§ 1964(c), 1962(c)). "Racketeering activity" is any act, or "predicate act," indictable under several provisions of Title 18 of the United States Code. See 18 U.S.C. § 1961. Civil RICO violations are defined under 18 U.S.C. § 1962, while "RICO standing" is defined under 18 U.S.C. § 1964(c).  To allege civil RICO standing under 18 U.S.C. § 1964(c), a "plaintiff must show: (1) that his alleged harm qualifies as injury to his business or property; and (2) that his harm was 'by reason of' the RICO violation." *Canyon County v. Syngenta Seeds, Inc*., 519 F.3d 969, 972 (9th Cir. 2008).

The United States Supreme Court has interpreted the phrase 'by reason of' in 18 U.S.C. § 1964(c) to require both (1) proximate and (2) but-for causation. *Holmes v. Sec. Inv'r Prot. Corp.*, 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992). "[T]he proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 133, 134 S. Ct. 1377, 188 L. Ed. 2d 392 (2014). It "demand[s]…some direct relation between the injury asserted and the injurious conduct alleged." *Holmes*, 503 U.S. at 268. Holmes outlines three factors regarding the "direct relation" requirement:

> First, the less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors. Second, quite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries. And, finally, the need to grapple with these problems is simply unjustified by the general interest in deterring injurious conduct, since directly injured victims can generally be counted on to vindicate the law as private attorneys general, without any of the problems attendant upon suits by plaintiffs injured more remotely.

*Id.* at 269-70 (internal citations omitted).

To be a member of an "enterprise conspiracy" under 18 U.S.C.S. § 1962(d) an individual, by his words or actions, must have objectively manifested an agreement to participate, directly or indirectly, in the affairs of an enterprise through the commission of two or more predicate crimes. *United States v. Northrup*, 482 F. Supp. 1032, 1033 (D. Nev. 1980).

Oliver's theory appears to be that he would not have placed losing bets on the Dodgers if the dark secrets of the baseball trade, here the "signal stealing" scandals of 2017 and 2018, had been public knowledge prior to the 2017 World Series. Oliver's theory is that the Astros and Red Sox harmed him

by defrauding the Dodgers through a pattern of stealing the Dodgers's hand signals. Oliver cannot show that the Astro's and Red Sox's actions are the proximate cause of his harm because his actions (placing bets) are distinct from the alleged RICO violation (defrauding the Dodgers of their World Series titles). Oliver is not the direct victim here and there is no proximate causation.

This is confirmed by considering the directness requirement: "One motivating principle is the difficulty that can arise when a court attempts to ascertain the damages caused by some remote action." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 458, 126 S. Ct. 1991, 1997 (2006); citing to *Holmes*, 503 U.S. at 269 ("[T]he less direct an injury is, the more difficult it becomes to ascertain the amount of a plaintiff's damages attributable to the violation, as distinct from other, independent, factors."); see also, *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co.*, 943 F.3d 1243, 1246 (9th Cir. 2019) ("[Q]uite apart from problems of proving factual causation, recognizing claims of the indirectly injured would force courts to adopt complicated rules apportioning damages among plaintiffs removed at different levels of injury from the violative acts, to obviate the risk of multiple recoveries.").

The Astros and Red Sox could have won the World Series for any number of reasons unconnected to the asserted pattern of fraud. The fact that a team may engage in the fraudulent use of technology to steal hand signals does not guarantee that the signal-stealing team will win. Oliver could have lost his bets for many reasons. Oliver's alleged injury is remote. Oliver cannot show that he is the direct victim here, and he does not have standing to bring RICO claims against the Astros and the Red Sox.

*//*

### ii. Oliver's Unjust Enrichment Claims

In Nevada, "[u]njust enrichment exists when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Certified Fire Prot. Inc. v. Precision Constr. Inc.*, 128 Nev. 371, 381, 283 P.3d 250, 257 (2012); citing to *Unionamerica Mtg. v. McDonald*, 97 Nev. 210, 212, 626 P.2d 1272, 1273 (1981). Oliver has not alleged a benefit conferred upon the Astros or the Red Sox. Oliver did not lose his gambling money to the baseball teams. Oliver placed his bets with third parties: a Las Vegas casino and a sports betting app. The Astros and Red Sox have not retained a benefit from Oliver's gambling losses. A claim for unjust enrichment in Nevada requires a more direct exchange. Oliver cannot proceed on his unjust enrichment claims against the Astros and Red Sox.

ACCORDINGLY,

IT IS ORDERED that plaintiff Oliver's application to proceed in forma pauperis (ECF No. 1) is GRANTED.

IT IS FURTHER ORDERED that the Clerk of Court shall file the complaint (ECF No. 1-1).

IT IS FURTHER ORDERED that Anthony Oliver's complaint (ECF No. 1-1) is DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Oliver has until Wednesday, April 22, 2020, to file an amended complaint addressing the issues discussed above. Failure to timely file an amended complaint that addresses the deficiencies noted in this order may result in a recommendation for dismissal with prejudice.

IT IS FURTHER ORDERED that if an amended complaint is later filed, the Clerk of the Court is directed NOT to issue summons on the amended complaint. The Court will issue a screening order on

the amended complaint and address the issuance of summons at that time, if applicable. See 28 U.S.C. § 1915(e)(2).

### NOTICE

Pursuant to Local Rules IB 3-1 and IB 3-2, a party may object to orders and reports and recommendations issued by the magistrate judge. Objections must be in writing and filed with the Clerk of the Court within fourteen days. LR IB 3-1, 3-2. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

Pursuant to LR IA 3-1, plaintiffs must immediately file written notification with the court of any change of address. The notification must include proof of service upon each opposing party's attorney, or upon the opposing party if the party is unrepresented by counsel. **Failure to comply with this rule may result in dismissal of the action.**

IT IS SO ORDERED.

DATED this 23rd day of March 2020.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE